# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

**DEBRA PRICE,**
on behalf of herself and                Civil Action No. 1:16-cv-00855
all others similarly situated,
            Plaintiff,

v.

**SPROUTS FARMERS MARKET, INC.,**
d/b/a/ SPROUTS FARMERS MARKET, LLC,

      Defendant.

---

## CLASS ACTION COMPLAINT

---

Debra Price ("Plaintiff"), on her own behalf and on behalf of the Class described herein, by and through her undersigned attorneys, complains and alleges as follows:

## CLASS ACTION COMPLAINT

This case is brought by Plaintiff who had her personal identifying information ("PII") accessed, stolen, and used without her authorization, and because of the negligence, breaches of statutory, common law and contractual duties, and other acts and omissions described herein on the part of Defendant Sprouts Farmers Market, Inc. ("Sprouts") she suffered actual harm and monetary damages. Plaintiff brings this action to obtain declaratory and injunctive relief,

1

damages (including compensatory, statutory, exemplary and punitive damages), costs of suit, attorneys' fees and other appropriate relief on her own behalf, and on behalf of all others similarly situated, specifically the over 21,000 other Sprouts employees who worked during 2015.

Plaintiff complains and alleges, as follows:

## NATURE OF THE CASE

1.    Plaintiff brings this case as a class action on behalf of herself and the more than 21,000 employees who have had their PII and tax information accessed, stolen and used illegally as a result of the acts and failures to act of the Defendant. This case seeks to remedy the harmful effects of the data breach that occurred in or about March 2016, Defendant's failure to timely and reasonably notify Plaintiff and the Class ("Plaintiffs") of the breach in accordance with the laws of most states, including Arizona, failure to abide by other laws that required Plaintiffs' PII be secured, and, the insufficient remedy afforded by Defendant.

2.    Plaintiff is a former employee of Sprouts whose tax information was stolen and used to claim a fraudulent tax refund before Plaintiff was made aware of the phishing scam at Sprouts, and before she was able to file her own tax return.  The theft and use of her personal information has caused actual and ongoing damage.  Defendant was negligent in storing, maintaining and disclosing its employees' Internal Revenue Service ("IRS") 2015 W-2 forms and that negligence has damaged and additionally placed  Plaintiffs at an increased risk of fraud, identity theft, and financial injury associated with repairing the identity theft that has already occurred, monitoring future attempts at identity theft, compensating the Plaintiffs for damage that has already occurred and will continue to occur in the future, and guarding against unauthorized tax filing and other abuse that is a direct and proximate result of Sprout's violations of Plaintiffs' rights.

2

## JURISDICTION AND VENUE

3.   This Court has diversity jurisdiction over this action pursuant to the Class Action
Fairness Act of 2005, 28 U.S.C. § 1332(d).  Plaintiff Price and Defendant are citizens of different
states.  Plaintiff resides in Aurora, Colorado. Defendant is an incorporated for profit business
entity whose principal place of business and corporate headquarters is in Phoenix, Arizona.

4.   More than 21,000 Plaintiff class members, nationwide, had their PII accessed, wrongfully
disclosed by Sprouts, and taken by unknown third parties.  The aggregate amount in controversy
exceeds $5,000,000.

5.   This Court has personal jurisdiction over the parties because the Defendant conducts
substantial business in this State, has had systematic and continuous contacts within this State,
and has agents and representatives that can be found in this State.

6.   Under 28 U.S.C. § 1391, venue is proper in this District because Defendant engaged in
substantial conduct relevant to the claims of Plaintiffs, and caused harm to members of the Class
in this District.

## PARTIES

7.   Plaintiff Price is a former employee of Sprouts.  Sprouts employed the Plaintiff from
approximately February 28, 2010 until approximately December 3, 2015.  She worked as a
courtesy clerk and then as a part time cashier.  Plaintiff Price's PII was compromised when on or
around March 14, 2016, a Sprouts employee who was given access to all of Plaintiffs' PII
emailed complete copies of all current and former employees' 2015 IRS W-2 forms to a phishing
scammer who pretended to be another Sprout's employee.  After Price's W-2 was stolen, her
identity was compromised.  Plaintiff and her husband were unable to e-file their taxes because

someone in possession of Plaintiff's social security number had already claimed a rapid refund through unknown sources to obtain Plaintiff's tax refund.  Plaintiff has suffered actual, tangible damages.  She will need to expend additional time, money and resources, to work with the IRS, her CPA, the State of Colorado and all credit reporting agencies to sort out the fraudulent tax claim made with her social security number that was compromised due to Sprout's negligence and failure to protect her form W-2.

8.   Defendant Sprouts is a Delaware corporation with it principal place of business in Arizona at 11811 N. Tatum Boulevard, Suite 2400, Phoenix, Arizona 85028, and headquartered at 5455 E. High Street, Suite 111, Phoenix, AZ 85054. Sprouts operates a nationwide chain of more than 220 grocery stores in across the United States and employs over 21,000 people as of the filing of this complaint.

## FACTUAL ALLEGATIONS

9.   Plaintiff was an employee at Sprouts from on or about February 28, 2010 until on or about December 3, 2015.

10. On or about March 14, 2016, the payroll department at Sprouts headquarters disclosed all its employees' 2015 W-2 earning statements to an unknown person who sent an email claiming to be a Sprouts' executive.

11. On March 17, 2016, Sprouts claims it became aware of a data breach disclosing its employees' 2015 W-2's.

12. The W-2s include an employee's full name, address, social security number ("SSN"), wages, and taxes withheld in 2015.

13. Sprouts has claimed that it alerted its employees before March 28, however the only notice Plaintiff and other class members received of this data breach was on or around April 1, 2016 when a letter arrived in the mail, dated March 28, 2016, informing Plaintiff that she and 21,000 of her former coworkers' 2015 W-2's were disclosed to an unknown person claiming to be a Sprouts senior executive.

14. The letter stated that:

a) Sprouts was the victim of a phishing scam the week of March 14, 2016.

b) Sprouts disclosed all 2015 form W-2 wage and tax statements when fulfilling what was believed to be a legitimate request for information

c) Sprouts became aware of the incident on March 17, 2016

d) Sprouts disclosed form W-2 which includes full name, address, SSN, wages, taxes withheld in 2015.

e) Sprouts claimed that it did not disclose birthdate, bank information, credit card information, or email addresses.

f) Sprouts stated that they had taken steps to address the situation, and suggested steps the recipient of the letter could take to protect their personal information.

g) Sprouts claimed they took immediate action as soon as they discovered the breach.

h) Sprouts stated it contacted the FBI

i) Sprouts also stated that it communicated with their employees/former employees so that those employees and former employees could take steps to protect themselves.

j) Sprouts offered each employee/former employee a complimentary one-year membership of Experian's Protect MyID Alert.

k)   Sprouts suggested that each employee obtain their free credit report from the credit bureaus, and look to the FTC to obtain more information about placing a security freeze on their credit files, and placing a fraud alert on their accounts also.

l)   Sprouts set up a tool free hotline for questions – 855-814-8016 and teammemberhelp@sprouts.com

m)   The letter was signed by Brandon Lombardi, Chief Legal Officer.

15.   The letter also stated that it had previously notified employees about the breach before the March 28 letter. However, neither Plaintiff, nor her minor daughter or other Plaintiffs who also worked at Sprouts in 2015 had received actual notice of the data theft before receiving the letter.

16.   The following week, the week of April 4, 2016, Plaintiff's CPA attempted to e-file Plaintiff and her husband's joint tax return for 2015 with the IRS.  However, the return was rejected because Plaintiff's SSN had already been used by an unknown person to get a rapid refund.

17.   On April 8, 2016, Plaintiff called the IRS to alert them of the apparent theft of her SSN and her tax refund.  The IRS confirmed the SSN used was Plaintiff's and put an alert on the return.  As of this date it is unknown exactly what process the Plaintiff and her husband will be able to use to file their taxes.  But it is clear that Plaintiff's SSN is compromised and will require additional time, money and effort to repair the damage already done, to ensure that her SSN is not used again and to do or undo whatever is necessary to repair the breach.

18.   Plaintiff's minor daughter was also an employee of Sprouts during 2015 and her W-2 has also been compromised leaving her vulnerable to identity theft and a threat that her credit will be compromised before even she has a chance to build that credit.

6

19. As a result of the data breach unknown third parties now possess the PII of Sprout's employees and former employees who are the Plaintiffs in this case.

20. As a direct and proximate cause of Sprout's disclosure of its employees 2015 W-2's the Plaintiffs' SSNs were stolen and used to claim Plaintiff's tax refund and an as yet unknown number of other Plaintiffs' tax refunds.

21. Upon information and belief the information was disseminated and transmitted over the internet in and from the state of Arizona by Sprouts.

22. A person's social security number is perhaps the most important piece of information to an individual in the modern world.  It is used among other things to verify eligibility for employment, to apply for a passport, to open a bank account, to apply for a credit card, or a student loan, or a mortgage.  A social security number is also needed to obtain government benefits like social security and Medicare.  Social security numbers are assigned to citizens (and sometimes to noncitizens) as early as their birth and are required to enroll in school, and to obtain healthcare services.  A social security number follows a person through life.

23. Sprouts, as an employer, required Plaintiffs to surrender to it their SSNs and other PII, and Sprouts was entrusted with properly holding and safeguarding such PII.

24. Sprouts had a duty as an employer to guard and protect the private, highly sensitive, confidential PII of the Plaintiffs.

25. Sprouts had a duty as a business to take reasonable measures to secure Plaintiffs' private information that was entrusted to it.

26. Sprouts not only failed to safeguard and prevent the theft of this PII from its computers or network, but voluntarily handed it over to third parties upon their mere electronically delivered email request.

27. Sprouts failed to take reasonable precautions to protect the Plaintiffs' PII, and otherwise failed to act reasonably in fulfillment of their duty not to disclose Plaintiffs' PII, and affirmatively to protect that PII.

28. Sprouts negligently and carelessly kept its employees and former employees personal information.

29. The risk to theft by or disclosure to cyber criminals of sensitive data, including PII, stored electronically is well-known and common knowledge.

30. Despite this knowledge, Sprouts did not encrypt or password-protect any of the Plaintiffs' PII that it wrongfully disclosed.

31. Sprouts' release of the PII was wantonly and willfully done.

32. Sprouts did not encrypt or password-protect its Plaintiffs' social security numbers as a prudent and responsible company would do with its employees' confidential and personal identifying information.

33. Arizona's Consumer Protection Act prohibits a person or entity from requiring an individual to transmit his or her social security number over the internet, unless the connection is secure or the social security number is encrypted.

34. Sprouts violated basic guidelines to encrypt or password-protect sensitive information of its employees and in so doing failed to meet the most basic standards of data security and reasonable business practices, and thereby failed to ensure adequate security of the Plaintiffs' personal, and financial PII and by failing to retain this PII in a secure and safe manner.

35. Within only a week of the data breach, Plaintiffs' PII was used to try to steal Plaintiff's federal tax return, to wreak havoc on Plaintiff's tax filing and cause unmeasured damage to the remainder of Plaintiffs' identities, which damage is ongoing.

**CLASS ALLEGATIONS**

36. Plaintiff here incorporates the above allegations by this reference.

37. Plaintiff brings this case also as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of all Plaintiffs and as members of the following proposed Class: All current and former employees of Defendant who worked at Sprouts and received a W-2 for work performed in 2015, and who, during the period beginning on or about March 14, 2016 and continuing through the present had their PII disclosed and disseminated by Sprouts, and subject to use by unauthorized persons as a result of the Sprout's dissemination of its employees' PII.

*Numerosity*

38. The proposed Class is so numerous that joinder of all of its members is impractical. In excess of 21,000 current and former employees of Sprouts suffered the loss of their PII due to the actions and failures of the Defendant.

*Common Questions of Law and Fact*

39. There are multiple issues of law and fact in this case against the Defendant that are common to the Class, including the following:

40. Whether the Defendant received and stored PII of Plaintiff and members of the Class;

41. The standard under which Defendant is to be held with respect to its possession and/or dissemination of Plaintiffs' PII;

42. Whether the Defendant had a duty to act reasonably in protecting the PII of Plaintiffs in its care, custody and control;

43. Whether the Defendant failed to act reasonably in protecting the PII of Plaintiffs in its care, custody and control;

44. Whether the actions and/or failures to act of the Defendant caused the PII of Plaintiffs to be accessed, stolen and/or used without authorization;

45. Whether the Defendant failed to timely and reasonably notify Plaintiffs of the theft of their PII in conformity with the laws of Arizona and other states;

46. Whether the Defendant's notification contained false or misleading information and/or failed to inform Plaintiffs of material information necessary to allow Plaintiffs to protect themselves from further harm due to the disclosure of their PII;

47. Whether the Defendant have been unjustly enriched by having obtained the labor and other benefits from services of Plaintiffs, and the saving of costs that would have been expended had they acted reasonably to protect the PII in their care, custody and control;

48. Whether the Defendant breached its agreements, express and implied, with Plaintiffs;

49. Whether the Defendant violated the duty of good faith and fair dealing in their agreements with Plaintiffs;

50. Whether Defendant breached a fiduciary duty it had toward the Plaintiffs;

51. Whether the Defendant complied with the security notification laws of Arizona and other States upon learning of the breach of the PII of Plaintiffs;

52. Whether the Defendant violated the consumer protection laws of Arizona and other states through their acts and omissions set forth in this Complaint;

53. Whether Plaintiff and members of the Class are entitled to declaratory and injunctive relief as to Defendants' conduct;

54. Whether Plaintiff and the members of the Class are entitled to damages, and, if so, the nature of such damages;

55. Whether Plaintiff and members of the Class are entitled to an award of punitive damages, reasonable attorneys' fees, prejudgment interest, post-judgment interest, costs of suit, and other appropriate relief under the circumstances of this case.

### *Typicality*

56. Plaintiff's claims are typical of the claims of the members of the Class.  Plaintiff and the members of the Class sustained injuries as a result of the unlawful disclosure of their PII, which injuries were directly and proximately caused by the Defendant's acts and omissions.  As detailed herein, Plaintiff's known harm that has already occurred consisted of the actual theft of her identity by the use of her SSN to file a fraudulent tax return, which resulted in costs, expenses, emotional distress and other damages and is likely to cause additional and continuing damage to all Plaintiffs.

### *Adequacy of Representation*

57. Plaintiff can and will fairly and adequately represent and protect the interests of the Class, and Plaintiff has no interests that conflict with or are antagonistic to the interests of the members of the Class.  Plaintiff has retained attorneys competent and for over 30 years experienced in complex class actions, including employment related class actions.  No conflict exists between Plaintiff and the members of the Class.

### *Superiority*

58. A class action is superior to any other available method for the fair and efficient adjudication of this controversy and common questions of law and fact overwhelmingly predominate over any individual questions that may arise.

11

59. The prosecution of separate actions by individual members of the plaintiff Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class. These adjudications would establish incompatible standards of conduct for the Defendant which would, as a practical matter, be disparities of the claims of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

60. By its dissemination of the Plaintiffs' PII Defendants have acted or refused to act on grounds generally applicable to all members of the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

61. Accordingly, class certification is appropriate under Rule 23(b)(1)(A), 23(b)(1)(B), 23 (b)(2) and 23(b)(3).

## COUNT I - NEGLIGENCE

62. Plaintiff incorporates by reference the preceding and following paragraphs as though fully set forth herein.

63. The Defendant owed a duty of care to Plaintiff and the Class to ensure that their PII was not used for improper purposes.

64. The Defendant breached their duty of care to Plaintiff and the Class to ensure that their PII was not used for improper purposes by failing to provide adequate protections to the PII, by negligently disseminating the PII, and by allowing the PII to be accessed, in unencrypted format, by third parties.

65. As a direct and proximate result of the Defendants' actions alleged above, the Plaintiff and the Class suffered damages.

12

WHEREFORE, Plaintiff, on behalf of herself and the members of the Class, respectfully seeks the relief set forth below.

## COUNT II –
## VIOLATIONS OF THE ARIZONA CONSUMER FRAUD ACT

66. Plaintiff incorporates by reference the preceding and following paragraphs as though fully set forth herein.

67. The Defendant engaged in an unfair or deceptive trade practice by not protecting and by not encrypting Plaintiff and the Class' PII when it transmitted its employees' social security numbers over the internet.

68. The lax security protocols and failure to encrypt Plaintiff and the Class' PII was a practice that occurred in the course of Defendant's business;

69. Defendant's failure to adequately protect the Plaintiff and the Class' PII impacts its employees, who represent over 21,000 consumers who are also members of the public and its actual or potential consumers of the Defendant's goods.

70. As a direct and proximate result of Defendant's unfair trade practices the Plaintiff and Class members suffered injury in fact to the protected interest of keeping their PII confidential and out of the hands of criminals and the practice caused the Plaintiff actual injury.

WHEREFORE, Plaintiff, on behalf of herself and the members of the Class, respectfully seeks the relief set forth below.

## COUNT III -- BREACH OF FIDUCIARY DUTY

71. Plaintiff incorporates by reference the preceding and following paragraphs as though fully set forth herein.

72. Defendant was a fiduciary, as an employer created by its undertaking, to act primarily for the benefit of its employees in matters connected with the their employment.

73. Plaintiff and the Class were in a fiduciary relationship by way of the duty Defendant had in relation to the employment of Plaintiffs, and Defendant's duty to act for or to give advice for the benefit of Plaintiff and the Class upon matters within the scope of their relationship, specifically to keep income records, and report those records in a form W-2 to the IRS as the employer.

74. The Defendant breached their duty of care to Plaintiff and the Class to ensure that their PII and W-2 was not used for improper purposes by failing to provide adequate protections to the information and by allowing the information to be accessed, in unencrypted format, by third parties to whom Sprouts voluntarily disseminated the information.

75. As a direct and proximate result of the Defendants' actions alleged above, the Plaintiff's suffered actual damages.

WHEREFORE, Plaintiff, on behalf of herself and the members of the Class, respectfully seeks the relief set forth below.

## COUNT IV – BREACH OF CONTRACT

76. Plaintiff incorporates by reference the preceding and following paragraphs as though fully set forth herein.

77. Plaintiff and the members of the Class had employment agreements with the Defendant. These agreements involved a mutual exchange of consideration whereby the Defendant entrusted Plaintiff and the Class to work in various roles (such as courtesy clerk and cashier in its grocery stores) on its behalf, in exchange for the promise of employment, with wages, benefits in some cases, and secure PII.

14

78. The failure of Defendants to keep secure from breach the PII of Plaintiff and the Class constitutes a material breach of the agreement between the Defendant and the Class.

79. As a direct and proximate result of the aforesaid breaches of the Defendant's agreements with Plaintiff and the Class, Plaintiff and the Class have been harmed.

WHEREFORE, Plaintiff, on behalf of herself and the members of the Class, respectfully seeks the relief set forth below

## COUNT V – BREACH OF IMPLIED CONTRACT

80. Plaintiff incorporates by reference the preceding and following paragraphs as though fully set forth herein.

81. Plaintiff and the Class were required by the Defendant to provide PII as a condition of their employment.

82. Implicit in the employment agreement between the Defendant and the Plaintiff and members of the Class was the obligation that both parties would maintain information confidentially and securely.  The Defendant implicitly and/or explicitly promised to keep the PII they collected from the Plaintiff and the Class secure and confidential. In addition, the Defendant implicitly promised to retain this PII only under conditions that safeguarded such information , and to either destroy it after the employment ended, or to take appropriate steps to ensure that it not improperly lost or stolen.

83. Plaintiff and the Class faithfully worked for the Defendant and steadfastly kept their employment obligations.  The Defendant did not.

84. As a direct and proximate result of the Defendant failures to secure, protect, and/or destroy the PII of the Plaintiff and the Class, and not to voluntarily disseminate it to third parties, the Plaintiff and the Class suffered, injury and damages as described herein.

15

WHEREFORE, Plaintiff, on behalf of herself and the members of the Class, respectfully seeks the relief set forth below.

### COUNT VI – FOR INVASION OF PRIVACY (UNREASONABLE PUBLICITY GIVEN TO ONE'S PRIVATE LIFE)

85. Plaintiff incorporates by reference the preceding and following paragraphs as though fully set forth herein.

86. The Defendant, through its negligence and carelessness disclosed facts, specifically Plaintiff's and the Class' PII that are private in nature.

87. By failing to protect those private facts the PII was disclosed to an unknown person or persons on the internet.

88. The Defendant's disclosure of Plaintiff and the Class' PII and the subsequent use of that information to claim others tax returns or steal others' identities is one which that is highly offensive to a reasonable person;

89. Plaintiff and the Class' W-2 information is not of legitimate concern to the public, but will only be used for nefarious purposes.

90. By not protecting Plaintiff and the Class' PII, including their W-2's the Defendant acted with reckless disregard of the private nature of the facts that were disclosed.

91. As a direct and proximate result of Sprouts' actions and inactions the Plaintiffs have suffered, and will continue to suffer actual damages.

WHEREFORE, Plaintiff, on behalf of herself and the members of the Class, respectfully seeks the relief set forth below.

16

## PRAYER FOR RELIEF

WHEREFORE, the representative Plaintiff, on behalf of herself and on behalf of the

Plaintiffs who are described within the Rule 23 definition of any class certified by the Court,

pray for the following relief:

A.    Certify this case as a Class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, and denominate Plaintiff as an adequate representative for the Class and the undersigned counsel as counsel for the Class;

B.    That, at the earliest possible time, Plaintiffs be allowed to give Notice of this action, or that the Court issue such Notice, to all persons who have at any time during the 2015, up through and including the date of this Court's issuance of Court-supervised Notice, been employed, as described above, by Sprouts. Such Notice shall inform such workers or former workers that this civil action has been filed and of the nature of the action;

C.    That the Court issue such injunctive and/or declaratory or other equitable relief to which the Plaintiffs may be entitled, so that the unlawful behavior of the Defendant may be stopped;

D.    Declare unlawful the acts and practices alleged herein, and enjoin the Defendant from committing the acts alleged herein.  Included in the injunction, the provision of credit monitoring services for Plaintiff and the Class for at least twenty-five (25) years, the provision of bank monitoring for Plaintiff the Class for at least twenty-five (25) years, the provision of credit restoration services for Plaintiff and

17

the Class for at twenty-five (25) years, and the provision of identity theft

insurance for Plaintiff and the Class for at least twenty-five (25) years;

E.     Enter judgment against Defendant for the violations alleged herein;

F.     Award the actual and compensatory damages incurred by Plaintiff and the

members of the Class as a result of the wrongful acts complained of, along with

pre-judgment and post- judgment interest at the maximum rate allowed by law;

G.     Award Plaintiffs punitive and exemplary damages for the wanton and willful

behavior of the Defendant, as alleged herein.

H.     That the representative Plaintiff be granted an incentive award, as deemed

reasonable by the Court;

I.     That the Plaintiffs be awarded their reasonable attorney's fees;

J.     That the Plaintiffs be awarded the costs and expenses of this action; and

K.     That the Plaintiffs be awarded such other legal and/or equitable relief as is

permitted by law.

**PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL TRIABLE ISSUES**

Respectfully submitted, this 14th day of April, 2016.

> _s/ David H. Miller_
> David H. Miller, Esq.
> Heather Joyce, Esq.
> SAWAYA & MILLER LAW FIRM
> 1600 Ogden Street
> Denver, CO 80218
> Telephone: 303-839-1650
> FAX: 720-235-4377
> Email: DMiller@sawayalaw.com
>            HJoyce@sawayalaw.com
> Attorneys for Plaintiffs

Plaintiffs' address:

Debra Price
c/o
David H. Miller
1600 Ogden Street
Denver, CO 80218